DELAWARE, LACKAWANNA & WESTERN RAILROAD COMPANY, Respondent, v. MARION J. SLOCUM, as General Chairman of Lackawanna Division No. 30 of the Order of Railroad Telegraphers, Appellant, et al., Defendants.

Argued June 2, 1949; decided July 19, 1949.

*Manly Fleischmann, John F. Dwyer, Leo J. Hassenauer* and *James W. Sack* for appellant. I. The jurisdiction of the tribunals established by the Railway Labor Act enacted under the authority of the commerce clause of the Federal Constitution is plenary and exclusive with respect to the present controversy. (*Texas & New Orleans R. R. Co.* v. *Brotherhood of Ry. and S. S. Clerks,* 281 U. S. 548; *Virginian Ry. Co.* v. *System Federation No. 40,* 300 U. S. 515; *Elgin, Joliet & Eastern Ry. Co.* v. *Burley,* 325 U. S. 711; *New York Post Corp.* v. *Kelley,* 296 N. Y. 178; *Bethle-*

*hem Steel Co.* v. *New York State Labor Relations Bd.,* 330 U. S. 767; *Moore* v. *Illinois Central R. R. Co.,* 312 U. S. 630; *General Committee* v. *Missouri-Kansas-Texas R. R. Co.,* 320 U. S. 323; *La Crosse Tel. Corp.* v. *Wisconsin Employment Relations Bd.,* 335 U. S. 866; *California* v. *Zook,* 336 U. S. 725; *Gilvary* v. *Cuyahoga Valley Ry. Co.,* 292 U. S. 57; *Cloverleaf Butter Co.* v. *Patterson,* 315 U. S. 148; *Adams Express Co.* v. *Croninger,* 226 U. S. 491; *Order of Ry. Conductors* v. *Pitney,* 326 U. S. 561.) II. The trial court's retention of jurisdiction over a controversy which should have been referred to the Railroad Adjustment Board constituted an abuse of judicial discretion as a matter of law. (*Colson* v. *Pelgram,* 259 N. Y. 370; *Washington Term. Co.* v. *Boswell,* 124 F. 2d 235; *James* v. *Alderton Dock Yards,* 256 N. Y. 298; *Meeker & Co.* v. *Lehigh Valley R. R. Co.,* 236 U. S. 412; *Baldwin* v. *Scott County Milling Co.,* 307 U. S. 478; *Railroad Telegraphers* v. *Railway Express Agency,* 321 U. S. 342; *Woollard* v. *Schaffer Stores Co.,* 272 N. Y. 304; *York* v. *Conde,* 147 N. Y. 486, writ of error dismissed *sub nom. Conde* v. *York,* 168 U. S. 642; *O'Connor* v. *Hudson Riv. Day Line,* 269 App. Div. 960, 296 N. Y. 501.)

*Pierre W. Evans* and *Rowland L. Davis, Jr.,* for respondent. The Supreme Court had jurisdiction to determine the matter in controversy and properly exercised such jurisdiction. (*Moore* v. *Illinois Central R. R. Co.,* 312 U. S. 630; *Swartz* v. *South Buffalo Ry. Co.,* 44 F. Supp. 447; *Louisville & Nashville Ry. Co.* v. *Bryant,* 263 Ky. 578; *Evans* v. *Louisville & Nashville Ry. Co.,* 191 Ga. 395; *Burton* v. *Oregon-Washington R. & Nav. Co.,* 148 Ore. 648; *Wooldridge* v. *Denver & R. G. W. R. Co.,* 191 P. 2d 882 [Col.]; *Southern Ry. Co.* v. *Order of Ry. Conductors of Amer.,* 41 S. E. 2d 774 [S. C.]; *New York Post Corp.* v. *Kelley,* 296 N. Y. 178; *German Masonic Temple Assn.* v. *City of New York,* 279 N. Y. 452; *Socony-Vacuum Oil Co.* v. *City of New York,* 247 App. Div. 163, 272 N. Y. 668.)

Conway, J. Defendant Marion J. Slocum appeals by our permission from a unanimous judgment of the Appellate Division, Third Department, affirming a declaratory judgment of the Supreme Court, Chemung County, which declared that three "crew-callers" in the Elmira yard office of the plaintiff railroad "and the positions held by them and the work assigned to them"

are within plaintiff's agreement with the above-named clerks' union. The Supreme Court also held that the telegraphers' union and its members were estopped by their acts and conduct as well as by their agreements from claiming the " crew-callers " positions or any of the work assigned to those positions.

While the telegraphers' union (which is the only appellant) does not concede that the decision below was correct " on the merits ", it has admittedly only asked for a review of two of its contentions below, viz.:

1. That the " National Railroad Adjustment Board " (hereinafter called the Board) has *exclusive* jurisdiction under the Railway Labor Act (U. S. Code, tit. 45, §§ 151 *et seq.*) to determine this controversy, so that the Supreme Court was without power to do so, and

2. Assuming the Supreme Court has jurisdiction, its exercise of that jurisdiction was an abuse of judicial discretion as a matter of law.

The facts which have been affirmed by the Appellate Division are as follows:

Defendants are the principal officers of the local units of the above-named unions which are the collective bargaining agents for certain employees in the Elmira yard of the railroad. Each union has a written agreement with the railroad. Each contract contains a general provision, known as a " Scope Rule ", which defines those kinds of work to be performed by members of the union, and a provision listing those positions in the Elmira yard which are to be held by employees represented by the union.

This controversy arose over the work performed by three crew callers in the Elmira yard office. Those employees were members of the clerk's union and their positions were listed in the contract between that union and the railroad. The telegraphers' union contended that some work performed by the crew callers was covered by the scope rule of the telegraphers' contract, and on June 4, 1942, the telegraphers' chairman requested that the work in question be reassigned to members of the telegraphers' union and that retroactive pay for past work be paid to men on the telegraphers' extra-list. The railroad has maintained that none of the work performed by the crew callers was covered by the scope rule of the tele-

graphers' contract. The chairman of the clerks' union has consistently maintained that the work of the crew callers was covered by the clerks' contract, and that any telegraphers' duties which they might be performing should be reassigned.

The chairman of the telegraphers' union had pressed its claim in conferences and correspondence with various officials of the railroad, including the general superintendent and the general manager. At this point, on March 3, 1944, the railroad commenced this action against the general chairmen of the two unions for a judgment declaring the respective rights and obligations of the railroad and the unions under the collective bargaining agreements. The complaint alleged that a controversy existed between the telegraphers' union and the clerks' union as to whether the work of the crew callers was covered by the railroad's contract with the telegraphers or by the contract with the clerks, and the railroad believed that all work performed by the crew callers was covered by the contract with the clerks.

It may be pointed out that after the commencement of this action the defendant telegraphers' union made an application at Special Term for an order approving a bond and directing the removal of the action to the United States District Court. The application was denied. (183 Misc. 454.)

Thereafter a bond was submitted to a Judge of the United States District Court for the Western District of New York and approved by him. The railroad appeared specially and moved to remand the case to our Supreme Court, and the telegraphers' union moved to dismiss the action. The motion to dismiss was denied and the railroad's motion to remand the case to our State court was granted. (56 F. Supp. 634.)

On February 5, 1945, the telegraphers' union made a motion at Special Term to dismiss the complaint which was denied in an unreported memorandum. On appeal to the Appellate Division the order was unanimously affirmed in an opinion reported in 269 Appellate Division 467.

As already noted, the action was tried before a Justice of the Supreme Court without a jury, and upon his findings and conclusions a judgment was entered which sustained the railroad's construction of the contracts and held that the telegraphers' union was estopped from claiming the positions in

controversy. The Appellate Division has affirmed in a *Per Curiam* opinion. (274 App. Div. 950.)

In each of the above five instances, the telegraphers' union urged that the State Supreme Court had no jurisdiction to entertain the action and that plaintiff's only recourse was to pursue its administrative remedy under the Railway Labor Act. Thus, that contention has been rejected on five occasions and by all the judges who have examined it.

As was pointed out in several of the above-mentioned opinions, plaintiff seeks no rights under the Railway Labor Act, but brings this action only for a construction or interpretation of the contracts between the parties. (183 Misc. 454; 56 F. Supp. 634, 637; 274 App. Div. 950.)

The Railway Labor Act provides that among its " General purposes " is the prompt and orderly settlement of all disputes between railroads and their employees. It divides disputes into two classifications as follows: (1) those " concerning rates of pay, rules, or working conditions " and (2) those " growing out of grievances or out of the interpretation or application of *agreements* covering rates of pay, rules, or working conditions." (U. S. Code, tit. 45, § 151a, cls. [4], [5].) (Emphasis supplied.)

The parties to *all* disputes are initially required to attempt to negotiate their differences by conferences between their respective representatives. (U. S. Code, tit. 45, § 152, subds. First, Second.)

Beyond the initial stage of negotiation and conference the act provides for different methods of settlement for the two classes of disputes. As pointed out in *Elgin, Joliet & Eastern Ry. Co.* v. *Burley* (325 U. S. 711, 723) the first type " relates to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past." Concerning that class of disputes the act provides first for mediation before the National Mediation Board, if that fails, then voluntary arbitration; and if that fails, conciliation by Presidential intervention. (U. S. Code, tit. 45, §§ 155, 157, 160; see *Burley* case, *supra,* p. 725.)

The second class of disputes "contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one." (*Burley* case, *supra*, p. 723.) All parties and the courts below agree that the instant case is within the second classification, and that the course prescribed by the act for the settlement of this type of dispute is submission to the Railroad Adjustment Board. The language of the act is as follows (U. S. Code, tit. 45, § 153, subd. First, par. [i]) : " (i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing, to reach an adjustment in this manner, the disputes *may be referred* by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes." (Emphasis supplied.) It will be noted that the wording of the statute with respect to the submission of disputes to the Board is " may be referred " which is clearly not mandatory.

Moreover, the Supreme Court of the United States has held in *Moore* v. *Illinois Central R. R. Co.* (312 U. S. 630) that the jurisdiction of the Board is *not* exclusive. In holding that a union member, who sued the railroad for wrongful discharge in violation of a collective bargaining agreement, did not first have to exhaust his administrative remedies under the Railway Labor Act, the court said (p. 635–636) : " It is to be noted that the section pointed out, § 153 (i), as amended in 1934, provides no more than that disputes ' may be referred . . . to the . . . Adjustment Board . . . '. It is significant that the comparable section of the 1926 Railway Labor Act (44 Stat. 577, 578) had, before the 1934 amendment, provided that upon failure of the parties to reach an adjustment a ' dispute shall be referred to the designated Adjustment Board by the parties, or by either party . . . ' This difference in language, substituting ' may ' for ' shall,' was not, we think, an

indication of a change in policy, but was instead a clarification of the law's original purpose. For neither the original 1926 Act, nor the Act as amended in 1934, indicates that the machinery provided for settling disputes was based on a philosophy of legal compulsion. On the contrary, the legislative history of the Railway Labor Act shows a consistent purpose on the part of Congress to establish and maintain a system for peaceful adjustment and mediation voluntary in its nature. The District Court and the Circuit Court of Appeals properly decided that petitioner was not required by the Railway Labor Act to seek adjustment of his controversy with the railroad as a prerequisite to suit for wrongful discharge."

Appellant argues in its brief as it did on the oral argument that recent cases in the Supreme Court of the United States demonstrate that the *Moore* case (*supra*) " will be limited in the future to the precise facts that were there considered " and that " it may confidently be predicted that the Supreme Court will hold the jurisdiction of the statutory tribunals to be exclusive in the absence of extraordinary circumstances calling for the intervention of equitable remedies." However, we may not speculate as to what the Supreme Court will hold in the future, and until the *Moore* case is limited to its facts or overruled, we should follow it, as have the courts below. (183 Misc. 454, 456–457; 269 App. Div. 467, 469; 274 App. Div. 950.)

Major reliance is placed by appellant upon *Order of Ry. Conductors* v. *Pitney* (326 U. S. 561). That case not only does not support appellant's position, but on the question of the jurisdiction of the courts, it is clearly to the contrary. There, a proceeding for reorganization of a railroad under section 77 of the Bankruptcy Act was pending in the District Court, and the trustees entered into an agreement with the union representatives of " yard conductors " that five freight trains which had been manned by " road conductors " should thereafter be manned by " yard conductors ". The representative of the " road conductors ", relying on earlier agreements, and alleging that the proposed displacement violated section 6 of the Railway Labor Act which prohibited such changes without thirty days' notice and action by the Mediation Board, petitioned the court to instruct the trustees not to displace the road conductors and to enjoin such action as long as the earlier agreements were not

altered in accordance with the Railway Labor Act. The District Court determined that the " yard conductors " were entitled to man the trains in question and dismissed the petition on the merits.

The Circuit Court of Appeals held that the petition should be dismissed on jurisdictional grounds because it thought that the remedies of the Railway Labor Act for the settlement of such disputes were exclusive, and that if it was mistaken on the jurisdictional question, then it agreed with the District Court that the petition should be dismissed on the merits. (145 F. 2d 351.)

The United States Supreme Court in reversing held that the District Court " might act in two distinct capacities." First, it might do so as a judicial body in " possession of the business " or a " carrier " within the meaning of section 1 of the Railway Labor Act. As such it would have to interpret the contract to exercise its jurisdiction under the Bankruptcy Act to control its trustee and preserve the debtor's estate. Thus, the order was affirmed insofar as it constituted instructions to the trustees, since that action was within the supervisory power of the District Court, as a bankruptcy court, and amounted to no more than a decision by the carrier itself. However, those instructions would not settle the dispute, and in its second capacity " the reorganization court would have to act in the further capacity of a tribunal empowered to grant the equitable relief sought " (p. 565), even though such action required an interpretation of the contracts. However, Congress having created the Board as an " agency especially competent and specifically designated to deal with " such a dispute, " the court should exercise equitable discretion to give that agency the first opportunity to pass on the issue. Certainly the extraordinary relief of an injunction should be withheld, at least, until then." (P. 567.) Accordingly the dismissal of the petition was stayed " so as to give an opportunity for application to the Adjustment Board for an interpretation of the agreements." (P. 568.)

Thus the *Pitney* case (*supra*) recognized the concurrent jurisdiction of the board and the courts to interpret the contracts, but held that the equity court *in the exercise of its discretion* should have stayed its hand under the circumstances of that case which included the fact that the court was acting in two capacities.

Moreover, there are a number of instances since the passage of the act where the courts of other States have taken jurisdiction of controversies involving the construction of agreements between a railroad and its employees. (*Evans* v. *Louisville & Nashville R. R. Co.,* 191 Ga. 395; *Southern Ry. Co.* v. *Order of Ry. Conductors of America,* 210 S. C. 121; *Wooldridge* v. *Denver & R. G. W. R. Co.,* 118 Col. 25; *Louisville & Nashville R. R. Co.* v. *Bryant,* 263 Ky. 578; *Burton* v. *Oregon-Washington R. R. & Navigation Co.,* 148 Ore. 648. See *Swartz* v. *South Buffalo Ry. Co.,* 44 F. Supp. 447.)

Thus, the challenge to the jurisdiction of the Supreme Court must fail, and the only remaining question is whether the failure to dismiss the action was an abuse of discretion *as a matter of law.*

We think not. In *New York Post Corp.* v. *Kelley* (296 N. Y. 178, 189–190) we said recently: " Where no mandatory statute is applicable, the Supreme Court determines its own practice. (Judiciary Law, § 82 [now § 83].) Rule 212 of the Rules of Civil Practice reads as follows: ' Rule 212. *Jurisdiction discretionary.* If, in the opinion of the court, the parties should be left to relief by existing forms of actions, or for other reasons, it may decline to pronounce a declaratory judgment, stating the grounds on which its discretion is so exercised.' This court is one of review, and we may not reverse the orders because of the exercise of the discretion committed to the Supreme Court through legislative provision unless we may say that there was an abuse of discretion as a matter of law. * * * The following, from *Rockland Light & Power Co.* v. *City of New York* (LEHMAN, Ch. J.), *supra,* p. 50, is apposite here: ' The sufficiency of the complaint has been sustained as a pleading. The order accomplishes nothing more. The order must be affirmed, regardless of the merits of the controversy or the scope of the plaintiff's rights, if we conclude that the complaint in an action for declaratory judgment should not be dismissed as " matter of law " where the facts alleged show the existence of a controversy concerning " rights and legal relations " and where it appears that the discretionary and extraordinary powers of the court have been invoked for a sufficient reason.' "

While the Railroad Adjustment Board may be peculiarly qualified to determine this controversy, " sufficient reason " appears

for the Supreme Court to have exercised the discretion committed to it by the Legislature to pronounce a declaratory judgment.

First, there is at least some doubt whether the procedure under the Railway Labor Act is adequate to bind all three parties to this action. The Justice at Special Term did not think so when he denied appellant's application for removal of the action to the Federal District Court. (183 Misc. 454.) Likewise, the Federal District Judge in remanding the case back to our Supreme Court said (56 F. Supp. at p. 636): " The Railway Labor Act (Sec. 153 First Division (i), supra, relates to ' the disputes between an employee or groups of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, * * *.' The dispute here asserted is between the Order of Railroad Telegraphers and the Brotherhood of Railway and Steamship Clerks and not between the plaintiff and either of said organizations; and no dispute here arises concerning ' rates of pay, rules, or working conditions.' While it is true that either of the aforesaid organizations could bring proceedings under the aforesaid provisions of the Railway Labor Act, it is not obligatory upon either of these so to do nor is there any way in which the plaintiff can compel the initiation of such a proceeding. The Railway Labor Act does not provide that the plaintiff can bring the claims jointly before the Railroad Adjustment Board for determination or that the plaintiff can make the second association a party to the proceedings so that it will be bound by decision rendered by the National Adjustment Board.''

In denying appellant's motion to dismiss the complaint which was made on the ground that the dispute should be decided by the Adjustment Board, the Trial Justice then sitting at Special Term also decided " that it is questionable if the relief there afforded is adequate.''

While the United States Supreme Court in the *Pitney* case (*supra*), held that the equity court should have refrained from deciding the controversy between the two unions and the railroad until an application for an interpretation of the agreements was made to the Adjustment Board, the question of whether a proceeding in the nature of an interpleader was available before the

Board does not appear to have been specifically raised and decided.

Secondly, while the dispute here reached the initial conference stage, no proceeding was ever instituted before the Adjustment Board. This is not a case where a declaratory judgment is being sought to stay the hand of an administrative agency so that the courts may pass on a question of *law* as to the jurisdiction of the agency, e.g., *New York Foreign Trade Zone Operators* v. *State Liq. Authority* (285 N. Y. 272); *Dun & Bradstreet* v. *City of New York* (276 N. Y. 198); *Aerated Products Co.* v. *Godfrey* (263 App. Div. 685, revd. on other grounds 290 N. Y. 92); *Booth* v. *City of New York* (296 N. Y. 573). Nor is it like *New York Post Corp.* v. *Kelley* (*supra*) in the sense that the court is being asked to pass upon a question of *fact* upon which depends the jurisdiction of the administrative board while a proceeding is pending before the board.

Rather this is a case where there is at most concurrent jurisdiction by the Adjustment Board and the State Supreme Court, over the parties and the subject matter, and before any proceeding has been instituted before the Board, the plaintiff has seen fit to ask merely for an interpretation of the agreements between the parties in an action for a declaratory judgment in the Supreme Court. Plaintiff is not attempting to oust the Board of jurisdiction by urging a question of law or fact that the Board is without jurisdiction. In *Woollard* v. *Schaffer Stores Co.* (272 N. Y. 304, 311–312) we said: " The Supreme Court may, of course, exercise its discretion in refusing to proceed to a declaratory judgment when other remedies are adequate and that is all we held in *Newburger* v. *Lubell* (257 N. Y. 383). When, however, another action between the same parties, in which all issues could be determined, is actually pending at the time of the commencement of an action for a declaratory judgment, the court abuses its discretion when it entertains jurisdiction. (*Colson* v. *Pelgram,* 259 N. Y. 370.) We have never gone so far as to hold that, when there exists a genuine controversy requiring a judicial determination, the Supreme Court is bound, solely for the reason that another remedy is available, to refuse to exercise the power conferred by section 473 and rule 212. Here a genuine controversy existed, and the parties were unable to determine definitely the nature which the litigation should assume. * * * The

numerous issues arising from the pleading are sufficient to confer upon the court power to entertain jurisdiction and to decide them all in this single action. While it had discretion to refuse jurisdiction it was not bound so to do.''

Thirdly, there is justification for a retention of jurisdiction by the Supreme Court because as stated by the Trial Justice when he denied appellant's motion to dismiss: '' The controversy arose out of work performed at Elmira and there seems to be no reason why the plaintiff should be compelled to go to the National Railroad Adjustment Board at Chicago, with the attendant delays, especially in view of the fact that it is questionable if the relief there afforded is adequate. The condition of the court calendar here, where the controversy arose, is such that the case can be disposed of expeditiously and at the convenience of the respective parties, affording full, adequate and prompt relief.''

The Appellate Division in affirming that order likewise said (269 App. Div. 467, 469): '' The courts of this State furnish a more convenient forum for the trial of the issues than the statutory board which functions in a distant State. Under such conditions, plaintiff should not be denied the right to litigate here and obtain a judgment declaratory of its obligations under the contracts. (*Rockland Light and Power Co.* v. *City of New York,* 289 N. Y. 45; *Woollard* v. *Schaffer Stores Co.,* 272 N. Y. 304.)''

Finally, the courts of other States have awarded declaratory relief in similar cases. (*Louisville & Nashville R. R. Co.* v. *Bryant,* 263 Ky. 578, *supra; Southern Ry. Co.* v. *Order of Ry. Conductors of America,* 210 S. C. 121, *supra.*)

The judgment should be affirmed, with costs.

DESMOND, J. (dissenting). By this declaratory judgment the Supreme Court of this State, has, at the suit of plaintiff railroad company, construed the labor agreements of plaintiff with two defendant railway unions and, in an attempt to settle a jurisdictional dispute between those unions, has held that under such agreements one of the unions (Brotherhood of Clerks, etc.) is entitled to claim, as against the other (Railroad Telegraphers), certain jobs in the service of plaintiff railroad company at its Elmira, N. Y., yard office. The Supreme Court of the United

States, however, ruled, in *Order of Ry. Conductors* v. *Pitney* (326 U. S. 561) that under the applicable Federal statute (Railway Labor Act; U. S. Code, tit. 45, § 151 *et seq.*) such determinations are not the business of the courts but of the Railroad Adjustment Board set up by Congress in that statute. The *Pitney case* (*supra*) as I read it, makes this plain and clear. The Supreme Court said (326 U. S., p. 566) : " Not only has Congress thus designated an agency peculiarly competent to handle the basic question here involved, but as we have indicated in several recent cases in which we had occasion to discuss the history and purpose of the Railway Labor Act, it also intended to leave a minimum responsibility to the courts." The basic question in the *Pitney* case was exactly the question here, and the Supreme Court said in so many words that the United States District Court should not have interpreted the labor agreements for the purposes of adjudicating the dispute between the unions and the railroad, but should have left all that to the Board. The Supreme Court pointed out (326 U. S. 566) that in order to decide that basic question, the court would have to interpret the collective bargaining agreements in dispute, and that such interpretation involved more than the mere construction of a document but had to be made in the light of other agreements and in the light of usage, practice and custom. In two recent cases, the Eighth Circuit Court of Appeals has construed the *Pitney* decision to mean just that, and in each instance the Supreme Court denied certiorari (*Order of R. R. Telegraphers* v. *New Orleans, Texas & Mexico Ry. Co.,* 156 F. 2d 1, certiorari denied 329 U. S. 758; *Missouri-Kansas-Texas R. R. Co.* v. *Randolph,* 164 F. 2d 4, certiorari denied 334 U. S. 818). A number of Federal District Court opinions are of like tenor (see for instance *Illinois Central R. R. Co.* v. *Brotherhood of R. R. Trainmen,* 83 F. Supp. 930, 933).

In the *Pitney* case (*supra*), the Federal District Court, sitting in bankruptcy, had construed contracts of the railroad with the two unions involved as meaning that one of those unions should have the contested jobs, and the petition of the other union was, accordingly, dismissed. The Circuit Court of Appeals (145 F. 2d 351) reversed the District Court, holding that the petition should be dismissed not on the merits, but on jurisdictional grounds, holding that the remedies of the Railway Labor Act

were exclusive. The Supreme Court then took the *Pitney* case in certiorari. It said (326 U. S. 567) that the District Court could not interpret the agreements but could do no more than hold the case until the Adjustment Board should hand down such an interpretation, at which time, the Supreme Court said, the District Court might, depending on the situation then existing, use its discretionary powers to grant an injunction if appropriate. In the case we have before us, the trial court granted no injunction or other relief — its judgment is nothing more or less than a declaration as to the meaning of these collective bargaining agreements and their application to the facts. In other words, the trial court did, here, exactly what the Supreme Court said it was improper for any court to do: take unto itself a function reserved by Congress to the Adjustment Board. It does not seem to me to make any great difference whether we label this '' want of jurisdiction '' or '' abuse of discretion ''. Whatever be the appropriate label, this declaratory judgment cannot, under the rule of the *Pitney* case, stand, and we are just as much bound to reverse for this kind of abuse of discretion (see *Colson* v. *Pelgram,* 259 N. Y. 370, 377) as for an absolute lack of jurisdiction. The fundamental question here is the one stated by the Supreme Court under different circumstances in *California* v. *Zook* (336 U. S. 725, 729) : '' does the state action conflict with national policy? '' The national policy here has been formulated by Congress and declared by the Supreme Court. The supremacy clause (U. S. Const., art. VI) and ordinary comity (*Bourjois Sales Corp.* v. *Dorfman,* 273 N. Y. 167, 171) prevent the State courts from following a different one, of their own making.

It is of course true that, in the *Pitney* case (*supra*), the Supreme Court dealt with another, separate, question besides the one above set out. The railroad, in the *Pitney* case, was in bankruptcy and was being operated by trustees appointed by the District Judge, so that, besides its ordinary judicial function, the District Court had the power and the duty to instruct the trustees in the running of the railroad. The Supreme Court held that, acting in the latter role, '' the District Court had supervisory power to instruct its trustees '' as to these contracts. The Supreme Court, however, was at pains to point out that the court's instructions to its trustees were '' no more binding on

the Adjustment Board than the action of any other carrier '' and said flatly that despite the court's power and duty to give such instructions, it '' should not have interpreted the contracts for purposes of finally adjudicating the dispute between the unions and the railroad '', and ordered the District Court to hold the case until the union's petition could go to the Adjustment Board and the agreements could be there interpreted (326 U. S., pp. 567, 568). The *Pitney* opinion, therefore, deals with two separable and separated questions, and its holding that the dispute had to go to the Adjustment Board was not based on, or in any way affected by, the circumstance that the particular railroad was being operated by agents of the District Court. Justice RUTLEDGE's dissenting opinion in the *Pitney* case agrees that the matter of interpretation was not for the court, but goes further and urges that the court should grant a temporary injunction to preserve the *status quo* in all respects until the Adjustment Board should hand down its decision.

*Moore* v. *Illinois Central R. R. Co.* (312 U. S. 630) decided five years before the *Pitney* case (*supra*) — the majority opinions in both cases were written by Justice BLACK — is not mentioned in the *Pitney* opinions and does not conflict at all with the *Pitney* rule. The *Moore* case was, as the Supreme Court itself described it in *Order of R. R. Telegraphers* v. *Railway Express Agency* (321 U. S. 342, 348) '' a common-law action to recover wages''. In other words, Moore, a railroad employee, brought, as was his absolute right, a common-law action for damages for an alleged wrongful discharge. The Supreme Court held that the Railway Labor Act grant of exclusive jurisdiction to the Board to construe railway labor contracts, did not prevent the bringing of such a suit and that, once the suit was properly before the court, it had to be decided; and, if the course of decision required an interpretation of contracts, the common-law court could make such a construction. But when, as here, the sole purpose of the suit, and the sole judgment entered, is a statement of the meaning of such contracts, then there is nothing that a court may or should do except see to it that the dispute goes to the Adjustment Board where it belongs. If the Supreme Court in the *Pitney* case had concluded that the *Pitney* situation was the same as the *Moore* situation except for the circumstance that the railroad in the *Pitney* case was in bankruptcy, the court certainly would

have said so, and not let the *Moore* case go unmentioned in the *Pitney* opinion.

The judgment should be reversed, with costs.

LOUGHRAN, Ch. J., LEWIS, DYE and BROMLEY, JJ., concur with CONWAY, J.; DESMOND, J., dissents in opinion in which FULD, J., concurs.

Judgment affirmed.