54 So.2d 308

### DAVIS v. SOUTHERN RY. CO. et al.

6 Div. 152.

Supreme Court of Alabama.

Oct. 4, 1951.

Abele & Witcher, Birmingham, for appellant.

Cabaniss & Johnston, Jos. F. Johnston and E. T. Brown, Jr., all of Birmingham, for appellee Southern Ry. Co.

Kingman C. Shelburne, Birmingham, for appellee Brotherhood.

STAKELY, Justice.

The original complaint filed in this cause consisted of one count, designated count one. The appellees separately demurred to this count. The demurrers were sustained by the court and thereafter from time to time the appellant added to his complaint additional counts designated respectively as counts A, B, C, D, E, and F. Count C was stricken on appellant's own motion. Demurrers were filed separately by the appellees to the other foregoing additional counts of the complaint. Demurrers were sustained to all of these counts and thereupon the plaintiff declined to plead further and took a nonsuit on account of adverse rulings on the pleadings. This appeal followed.

It appears from the allegations of each count that the plaintiff was employed by the Southern Railway Company, a corp., as clerk in Birmingham, Alabama, and there was in force and effect at the time an agreement between the defendant Southern Railway Company, a corporation, and the defendant Brotherhood of Railway Clerks, an unincorporated association, as bargaining agent for the clerical employees of the railroad company, under which said

contract the plaintiff had seniority rights with respect to his employment and was entitled to seniority over a number of employees of the railroad. It is alleged that the defendants combined, conspired, confederated and agreed together to cause the plaintiff to lose his seniority rights with the railroad and in the execution of the conspiracy the defendants wrongfully and maliciously caused the plaintiff to lose his seniority rights with the railroad with resulting damage, etc. While there is some variation in the allegations of the counts and greater detail is set forth in some counts than others, for the purposes of this appeal it can be understood that the gist of all counts is the allegation that the defendants conspired to deprive plaintiff of seniority rights to which he was allegedly entitled under a collective bargaining agreement between the appellees. An interpretation of the contract between the appellees is obviously necessary to determine whether or not plaintiff had and was actually deprived of seniority rights. The plaintiff made the contract a part, respectively, of all counts of the complaint except two and in those two counts reference is made to the provisions of the contract. However nowhere in any count is it alleged that appellant is no longer in the employment of the railroad. In no count is it alleged that appellant has exhausted the administrative remedies provided by the Railway Labor Act. Accordingly construing the pleading most strongly against the pleader, it must be assumed for the purpose of this appeal that the appellant is still in the employment of the Southern Railway Company and has not pursued the administrative remedies provided by the Railway Labor Act, 45 U.S.C. A. §§ 151–163.

There is, therefore, presented on this appeal the question of whether or not appellant, who is presently an employee of the railroad, can maintain an action in the courts for damages for loss of seniority rights, involving the interpretation of a bargaining agreement covering the future relations of appellant and the Southern Railway Company, until appellant has exhausted the administrative remedies provided by the Railway Labor Act. This question is presented by appropriate grounds of demurrer assigned separately and severally to all counts of the complaint.

The history and purposes of the Railway Labor Act have been recently reviewed and considered by the Supreme Court of the United States in the case of Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795. In that case the railroad filed an action in the state courts of New York for a declaratory judgment against two unions in which an interpretation of existing bargaining agreements was sought without referring the controversy to the National Railway Adjustment Board. On the basis of the case of Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, to which we shall later refer, the Court of Appeals of New York, 299 N.Y. 496, 87 N.E.2d 532, held that the courts of New York had concurrent jurisdiction with the National Railway Adjustment Board to interpret the contracts and render a declaratory judgment. In reversing and holding that the Court of Appeals of New York had no jurisdiction, the Supreme Court of the United States held that the controversy should have been presented to the National Railway Adjustment Board. The court said: [339 U.S. 239, 70 S.Ct. 579,]

"The paramount importance of having these chosen representatives of railroads and unions adjust grievances and disputes was emphasized by our opinion in Order of R[y.] Conductors v. Pitney [326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318,] supra. There we held, in a case remarkably similar to the one before us now, that the Federal District Court in its equitable discretion should have refused 'to adjudicate a jurisdictional dispute involving the railroad and two employee accredited bargaining agents * * *.' Our ground for this holding was that the court 'should not have interpreted the contracts * * *' but should have left this question for determination by the Adjustment Board, a congressionally designated agency peculiarly competent in this field. 326 U.S. at pages 567–568, 66 S.Ct. at page 325, 90 L.Ed. 318. This reasoning equally supports a denial

of power in any court—state as well as federal—to invade the jurisdiction conferred on the Adjustment Board by the Railway Labor Act.

"Our holding here is not inconsistent with our holding in Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees. If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board.

"We hold that the jurisdiction of the Board to adjust grievances and disputes of the type here involved is exclusive."

The same question was before the Supreme Court of the United States in Order of Railway Conductors of America v. Southern Railway Co., 339 U.S. 255, 70 S. Ct. 585, 586, 94 L.Ed. 811, decided the same day as the Slocum case, wherein the facts were substantially the same as in the Slocum case. The court in this latter case said:. "For reasons set out in the Slocum case, 339 U.S. 239, 70 S.Ct. 577, [94 L.Ed. 795], we hold that the South Carolina state court was without power to interpret the terms of this agreement and adjudicate the dispute. We discuss this case separately because it sharply points up the conflicts that could arise from state court intervention in railroad-union disputes. After the railroad had sued in the state court, the union filed a petition for hearing and award before the Adjustment Board. The state court nevertheless proceeded to adjudicate the dispute.

Sustaining the state court's action would invite races of diligence whenever a carrier or union preferred one forum to the other. And if a carrier or a union could choose a court instead of the Board, the other party would be deprived of the privilege conferred by § 3, First (1) of the Railway Labor Act, * * * 45 U.S.C.A. § 153, First (1), which provides that after negotiations have failed 'either party' may refer the dispute to the appropriate division of the Adjustment Board."

Courts other than the Supreme Court of the United States have recently had occasion to consider the question under discussion. We cite these decisions as follows: Brotherhood of Railroad Trainmen v. Texas & P. Ry. Co., Tex.Civ.App., 231 S.W.2d 451; Seaboard Air Line Railroad Company v. Brotherhood of Railroad Trainmen, 5 Cir., 1950, 181 F.2d 599; Piscifelli v. Pennsylvania-Reading Seashore Lines, 8 N.J.Super. 557, 73 A.2d 751; Kendall v. Pennsylvania R. R. Co., D.C.. 94 F.Supp. 875. In each of the foregoing cases in accordance with the Slocum and Southern Railway Company cases, supra, it was held that the action could not be maintained because the plaintiff was seeking an interpretation of his rights under a bargaining agreement which would be binding in the future.

The case at bar clearly falls within the rule established in the Slocum and Southern Railway Company cases, supra. The appellant in this case while seeking damages only is still in the employment of the railroad and before damages can be awarded to him the existing bargaining agreement governing the class to which appellant belongs must be interpreted.

The authorities cited by the appellant are not in conflict with the view here expressed. In Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, as pointed out in Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, Moore sued for damages claiming wrongful discharge contrary to the terms of a bargaining agreement. It was held that the courts had jurisdiction since Moore had accepted his discharge as

206

final and had left the employment of the railroad.

In Steele v. Louisville & N. R. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, and Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, etc., 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, the carrier and the union representing locomotive firemen entered into a contract with respect to the rights of negroes to be employed as firemen and the seniority rights of existing negro employees. Without resort to the National Railway Adjustment Board, suit was brought to enjoin the enforcement of such agreement. In holding that such action could be maintained by negro firemen adversely affected by the agreement, the court took the position that the right to maintain an action is granted "only when collective bargaining agreements are unlawfully entered into or when the agreements themselves are unlawful in terms or effect". Hayes v. Union Pacific R. Co., 9 Cir., 184 F.2d 337, 338. In the Steele and Tunstall cases the contract itself was being attacked, but in the case at bar appellant claims by virtue of the contract which is recognized as valid. Besides in the Steele and Tunstall cases it was held that there was no administrative remedy available to the plaintiffs under the unusual circumstances there presented.

It is suggested that appellant has no administrative remedies because the union neither would or could present the appellant's case before the National Railway Adjustment Board. There is no merit in the suggestion because the appellant could have pursued the administrative remedies either in person or by his attorney. "An extraneous matter not shown by the complaint upon which plaintiff places much reliance is his statement that his grievance over the course of the years had been frequently brought to the attention of the officers of his bargaining representative and because of their refusal to act in his behalf he was cut off from access to the Railroad Adjustment Board. This assertion, however, if it had been alleged would not have strengthened plaintiff's cause for the reason that his remedy was not dependent upon action by the agency which repre-

sented the employees but he was entitled either personally or by attorney to present his grievance to the Adjustment Board where all the parties interested in the dispute are entitled to notice, hearing and to participate. See Elgin, Joliet & Eastern Railway Co., [Elgin, J. & E. R. Co. v. Burley], supra, 325 U.S. [711] at pages 727 and 732, 65 S.Ct. 1282, 89 L.Ed. 1886." Starke v. New York, C. & St. L. R. Co., 7 Cir., 180 F.2d 569, 573.

The court acted correctly in sustaining the demurrers to the various counts of the complaint.

Affirmed.

LIVINGSTON, C. J., and BROWN and LAWSON, JJ., concur.