Thomas J. Brennan, as President of Lackawanna Lodge No. 715, Brotherhood of Railroad Trainmen, et al., Appellants and Respondents, *v.* Delaware, Lackawanna & Western Railroad Company, Respondent, and George C. Slade, as General Chairman of General Adjustment Committee of Said Railroad of Switchmen's Union of North America, et al., Respondents and Appellants, et al., Defendants.

Argued November 27, 1951; decided January 24, 1952.

*Thomas J. McKenna* for plaintiffs, appellants and respondents. I. The Appellate Division erred in dismissing plaintiffs' complaint on the authority of *Slocum* v. *Delaware, L. & W. R. Co.* (339 U. S. 239). (*Elgin, J. & E. R. Co.* v. *Burley,* 325 U. S. 711; *Order of Conductors* v. *Pitney,* 326 U. S. 561; *Southern Pac. Co.* v. *Joint Council Dining Car Employees,* 165 F. 2d 26, 333 U. S. 838; *Order of R. R. Tel.* v. *New Orleans, Texas & Mex. Ry. Co.,* 156 F. 2d 1, 329 U. S. 758, 829; *Hunter* v. *Atchison, T. & S. F. Ry. Co.,* 171 F. 2d 594, 337 U. S. 916; *Shipley* v. *Pittsburgh & L. E. R. R. Co.,* 83 F. Supp. 722; *Missouri-Kansas-Texas R. Co.* v. *Randolph,* 182 F. 2d 996; *Terminal Assn.* v. *Trainmen,* 318 U. S. 1; *Switchmen's Union* v. *Board,* 320 U. S. 297; *General Committee* v. *M.-K.-T. R. Co.,* 320 U. S. 323). II. If the Appellate Division's reversal of the judgment was predicated on a finding that the Referee erred when he held that plaintiffs' 1926 contract was abrogated by defendant carrier's letter of August 8, 1935, then such a reversal was proper in view of the answers, the undisputed proof and applicable law controlling the interpretation or understanding of the letter itself, and the legal conclusiveness of prior findings to the contrary by jurisdictionally empowered tribunals of the Railway Labor Act. (*Paige* v. *Willet,* 38 N. Y. 28; *Milbank* v. *Jones,* 127 N. Y. 370; *Wood* v. *Proudman,* 122 App. Div. 826; *Willey* v. *Cameron, Michel & Co.,* 217 App. Div. 651; *Matter of Burmester* v. *De Lucia,* 263 N. Y. 315; *Brearton* v. *De Witt,* 252 N. Y. 495; *Railway Express Agency* v. *Order of R. Telegraphers,* 137 F. 2d 46, 321 U. S. 342; *Knickerbocker Trust Co.* v. *O'Rourke Eng. Constr. Co.,* 124 App. Div. 210, 196 N. Y. 509; *Williams* v. *United States,* 26 U. S. Ct. Cl. 132; *Chicot County Dist.* v. *Bank,* 308 U. S. 371; *Case* v. *Beauregard,* 101 U. S. 688.) III. Plaintiffs' rights under the "Due Process" clause of section 6 of article I of the New York Constitution were violated as were their like rights under section 1 of the Fourteenth Amendment of the United States Constitution. (*Gilbert* v. *Ackerman,* 159 N. Y. 118; *Busch Jewelry Co.* v. *United Retail Employees' Union,* 168 Misc. 224; *Bradley* v. *Lightcap* [*No. 2*], 195 U. S. 24; *Bradley* v. *Lightcap,* 195 U. S. 1; *Southern Railway Co.* v. *Carson,* 194 U. S. 136; *Westervelt* v. *Gregg,* 12 N. Y. 202; *Bertholf* v. *O'Reilly,* 74 N. Y. 509; *Campbell* v. *Evans,* 45 N. Y. 356; *Rockwell* v. *Nearing,* 44 Barb. 472, 35 N. Y. 302;

*People ex rel. MacDonald* v. *Leubischer,* 34 App. Div. 577; *Riverside Mills* v. *Menefee,* 237 U. S. 189; *Campbell* v. *Holt,* 115 U. S. 620; *Hurtado* v. *California,* 110 U. S. 516; *Matter of Davies,* 168 N. Y. 89; *Gilman* v. *Tucker,* 128 N. Y. 190; *Davidson* v. *New Orleans,* 96 U. S. 97; *Stuart* v. *Palmer,* 74 N. Y. 183.) IV. The Appellate Division's decision violated plaintiffs' rights under article VI of the United States Constitution.

*Andrew B. Gilfillan* and *Harold C. Heiss* for defendants, respondents and appellants. I. The trial court had jurisdiction of the subject matter of this action and of the counterclaim or cross complaint. (*Slocum* v. *Delaware, L. & W. R. Co.,* 339 U. S. 239; *Order of Conductors* v. *Pitney,* 326 U. S. 561.) II. The cause of action contained in this defendant's counterclaim or cross complaint is not barred by any of the affirmative defenses pleaded. The determinations of the Railroad Adjustment Board, or of the National Mediation Board, are not a bar to the Referee's finding of abrogation of plaintiff's contract. The pleadings do not preclude the finding of an abrogation of the contract by the letter of August 8, 1935. (41 Am. Jur., pp. 400–402; Civ. Prac. Act, § 42; *Catholic Foreign Mission Soc.* v. *Oussani,* 215 N. Y. 1.) III. The judgment of the Appellate Division should be reversed and the case remitted to the Appellate Division for determination of the questions of fact and law raised in that court.

*Hugh McM. Russ, Rowland L. Davis, Jr.,* and *Robert H. Daley* for respondent. I. The decisions of the United States Supreme Court in the cases of *Slocum* v. *Delaware L. & W. R. Co.* (339 U. S. 239) and *Order of Conductors* v. *So. R. Co.* (339 U. S. 255), to the effect that State courts are without jurisdiction to grant a declaratory judgment in an action involving a railroad company and one or more unions for contract interpretation, are controlling and decisive of this case. (*Moore* v. *Illinois Central R. Co.,* 312 U. S. 630; *Order of Conductors* v. *Pitney,* 326 U. S. 561; *Missouri-Kansas-Texas R. Co.* v. *Randolph,* 182 F. 2d 996; *New Orleans Public Belt Railroad Comm.* v. *Ward,* 182 F. 2d 654; *Hettenbaugh* v. *Airline Pilots Assn. International,* 189 F. 2d 319; *Kendall* v. *Pennsylvania R. Co.,* 94 F. Supp. 875; *Michel* v. *Louisville & N. R. Co.,* 188 F. 2d 224; *Hayes* v. *Union Pac. R. Co.,* 184 F. 2d 337; *Rose* v. *Brotherhood of Railway & Steam-*

*ship Clerks,* 181 F. 2d 944; *Seaboard Air Line R. R. Co.* v. *Brotherhood of R. R. Trainmen,* 181 F. 2d 599.) II. Since the issue presented here is solely a question of representation, and since the National Mediation Board has determined, after mediation, election and certification in 1935, that the Switchmen's Union of North America is the proper union to represent the men on the " 3:00 P. M. City Line Job ", any action to review the mediation, election and certification is not justiciable. (*Switchmen's Union* v. *Board,* 320 U. S. 297; *General Committee* v. *M.-K.-T. R. Co.,* 320 U. S. 323; *General Committee* v. *Sou. Pac. Co.,* 320 U. S. 338; *Virginian Ry.* v. *Federation,* 300 U. S. 515; *Order of Railway Conductors* v. *National Mediation Board,* 141 F. 2d 366; *Elgin, J. & E. R. Co.* v. *Burley,* 325 U. S. 711.) III. If, despite the decision of the United States Supreme Court in the *Slocum* case, this court should hold that there is jurisdiction, then the rights of both unions are clearly barred by the Statute of Limitations. (*Washington Terminal Co.* v. *Boswell,* 124 F. 2d 235, 319 U. S. 732.) IV. Since the Appellate Division's reversal of the judgment was predicated solely upon its lack of jurisdiction under the decision in the *Slocum* case, plaintiffs' conjectures and speculations as to other possibilities with respect to the trial court's holding of abrogation of the 1926 contract are academic. The answers did not preclude a finding of abrogation of the contract. (*Sternstein* v. *Heit,* 186 App. Div. 45; *Auerbach* v. *Taub,* 194 Misc. 86, 275 App. Div. 802; *Milbank* v. *Jones,* 127 N. Y. 370; *Calvo* v. *Davies,* 73 N. Y. 211; Clark, Code Pleading [2d ed.], p. 621; Civ. Prac. Act, § 109; *Farmers' Loan & Trust Co.* v. *Housatonic R. R. Co.,* 152 N. Y. 251; 4 Carmody on New York Practice, p. 3163.) V. Plaintiffs' constitutional rights, either Federal or State, have not been violated.

FULD, J. This suit concerns a controversy between rival railroad unions — in which defendant railroad is necessarily involved — as to which union is entitled to furnish employee-members to man certain railroad operations or " runs ", known collectively as the " 3:00 P.M. City Line Job " and the " seventh day extra job ", in the Buffalo district of defendant railroad company. The Brotherhood of Railroad Trainmen (hereafter referred to as plaintiff union) seeks an injunction and a declara-

tory judgment — an injunction to enjoin the railroad from assigning the city line job to the yardmen or switchmen belonging to the Switchmen's Union (hereafter called defendant union) and a declaration as to the respective rights of the two unions to employment on the various " runs " described in the contract. It is defendant railroad's position that the courts lack jurisdiction of the controversy.

The Official Referee decided, on the strength of this court's decision in *Delaware, L. & W. R. R. Co.* v. *Slocum* (299 N. Y. 496), that it had jurisdiction of the dispute and found in favor of defendant union as to the city line job and in favor of plaintiff union on the seventh day extra job. The Appellate Division, Fourth Department, unanimously reversed and dismissed the complaint, holding — on the authority of the United States Supreme Court's decision in *Slocum* v. *Delaware, L. & W. R. Co.* (339 U. S. 239), which reversed our determination, *supra* — that the state courts lack jurisdiction of the controversy.

The dispute or, more precisely, its origin can be traced to 1920, when a wildcat strike of switchmen initiated a number of employment changes in the Buffalo district of defendant railroad. Defendant union, unable to control the strike in that area, surrendered its existing contract to the railroad which assigned that contract to plaintiff union, with the consequence that plaintiff thereafter represented both roadmen and yardmen in the Buffalo district. Plaintiff's claim to the city line job is based on its 1926 contract with defendant railroad. That contract contained an " appendix ", wherein certain " runs " — which before 1920 had been operated by switchmen belonging to the Switchmen's Union — were included in " Road Service " and manned by roadmen of plaintiff union. Neither side claims that the city line job was originally included in the 1926 appendix — although, defendant railroad acknowledges, plaintiff union could, at any time between 1920 and 1935, have required it to be included therein and manned by its roadmen. But plaintiff union maintains that in December, 1937, the " type, character and nature of work " on the city line job changed from yard and switching work to road service and that job should now be governed by the 1926 appendix denominating similar types of former yard work as " Road Service ".

Defendant union's claim to the city line job and the seventh day extra job is founded upon the results of an election held in 1935 under the auspices of the National Mediation Board. At that election, held to determine whether defendant union should again represent yardmen in the Buffalo district, only yardmen, including the " crew " on the city line job, were allowed to vote. The election won, defendant union entered into its " 1935 Memorandum " agreement with the railroad. That Memorandum provided that that union would thereafter represent yardmen in the Buffalo district and that " all work in that [yard] will be performed " by them, and a letter from the railroad company to the chairmen of the two unions gave notice of " the discontinuance of the existing contract between this company and [plaintiff union], insofar as it relates to yard men at Hoboken and Buffalo ". Denying that the character of its operations has changed, defendant union presses the claim to the city line job by reason of the election, the 1935 Memorandum and the letter to which reference has just been made.

After the reinstatement of defendant union in 1935, both unions attempted to clarify the status of the city line job. In 1938, defendant union invoked the jurisdiction of the National Mediation Board in an effort to be designated representative of those employees included in the appendix of plaintiff union's 1926 contract with the railroad. The Mediation Board dismissed the case, declaring that the Switchmen's Union was not entitled to represent those employees because they had been excluded from the election which resulted in the certification of defendant union. No specific reference was made to the city line job.

In 1944, however, plaintiff filed a claim with the Railroad Adjustment Board which, the parties concede, involves the same issues as are presented in the case before us. Based upon grievances of two of its trainmen members who sought yardworkers' pay rates in connection with the city line job, the claim was " dismissed " by the Board. In essence, the Board's decision directed the two unions to adjust the dispute between themselves. After noting that " This Division of the Adjustment Board has jurisdiction over the dispute involved herein ", the Board went on to declare that " The question    *    *    *

involved should be adjusted by and between the interested organizations, i.e., Brotherhood of Railroad Trainmen, Order of Railway Conductors [now represented by plaintiff union] and Switchmen's Union of North America, as it involves classification of service on run under what seem to this Division to be conflicting agreements and facts concerning the dispute." The " Award " was that the " Case [be] dismissed."

Attempts on the part of the unions to adjust the " question " having proved futile, plaintiff union filed its present complaint in the Supreme Court. It is our view, as it was the Appellate Division's, that the courts of this state lack jurisdiction to entertain the action.

The Railway Labor Act accords the Adjustment Board jurisdiction over " disputes between an employee or group of employees and a carrier or carriers growing out of *grievances* or out of the *interpretation or application of agreements* concerning rates of pay, rules, or working conditions " (Railway Labor Act, § 3, subd. [i]; U. S. Code, tit. 45, § 153, subd. [i]). And the Supreme Court of the United States has held that, where an interpretation of their respective agreements is needed to determine which of two unions is entitled to furnish employees for a particular job or jobs, the dispute is one envisaged by the Act and falls within the Board's jurisdiction. (See, e.g., *Slocum* v. *Delaware, L. & W. R. Co., supra,* 339 U. S. 239; *Order of Conductors* v. *Pitney,* 326 U. S. 561.) In the *Slocum* case, for instance, it was a clerks' union and a telegraphers' union which claimed jobs covered by their respective agreements; in the *Pitney* case, trainmen and conductors relied upon agreements which covered identical jobs. And such is the case before us. The two unions dispute the status of the city line job, each claiming that its own members are entitled to work it. Both of their agreements with defendant railroad are concededly legal and valid. The ultimate question for determination is whether the jobs which each contract encompasses cover the work on that particular " run ". Assuredly, that involves the " scope of [the] respective agreements " (*Slocum* v. *Delaware, L. & W. R. Co., supra,* 339 U. S. 239, 240) and requires their " interpretation " and " application " to the situation in question (Railway Labor Act, § 3, subd. [i]). And, beyond that, we fail to see how, in

any event, it may be said that the dispute is not one "growing out of grievances * * * concerning rates of pay, rules, or working conditions" (*id*).

Whatever authority the courts retain to determine the existence, validity or legality of contracts between railroads and their employees or the unions representing them (see, e.g., *Hettenbaugh* v. *Airline Pilots Assn. International*, 189 F. 2d 319, 320), the determination here sought is of an entirely different sort — going beyond such matters and involving much more. This is not, as plaintiff union suggests, a dispute concerning "clear breaches of solemn clear contracts" which require no "interpretation", nor one involving mere indecision as to which of two agreements — insofar as the city line job is concerned — is in force and effect. And, significantly, the National Mediation Board, in connection with defendant union's claim in 1938 in this very case, after declaring that it was without authority "to change the specific classification of these [union] agreements", went on to say that, "If any reclassification is to be made it will have to be done by changing the existing agreements in accordance with the provisions for their amendment or interpretation." "Interpretation", of course, requires presentation to the Adjustment Board.

That the Adjustment Board has jurisdiction of the controversy may not, then, be doubted. The primary question here posed, however, is whether the parties — having once invoked the jurisdiction of the Board and having failed to "adjust" the controversy as suggested by that body — were privileged to initiate an action in the courts to have their respective rights defined and declared. It is entirely clear, of course, that the parties must in the first instance proceed before the Board. (See, e.g., *Slocum* v. *Delaware, L. & W. R. Co., supra,* 339 U. S. 239; *Order of Conductors* v. *Pitney, supra,* 326 U. S. 561.) Thus, in the *Pitney* case, the court wrote (p. 566): "Not only has Congress thus designated an agency peculiarly competent to handle the basic question here involved, but as we have indicated in several recent cases in which we had occasion to discuss the history and purpose of the Railway Labor Act, it also intended to leave a minimum responsibility to the courts." And the *Slocum* case is to the same effect. It involved a dispute in which a clerks' union and a telegraphers' union each main-

tained that certain jobs were covered exclusively by its own particular contract with the defendant railroad. The parties pursued their claims in the manner initially provided by the Railway Labor Act — that is, by conferences among the respective representatives. When they failed to agree, the railroad, instead of proceeding before the Adjustment Board, commenced an action for declaratory judgment in the state court. Assuming jurisdiction of the controversy, the court decided it on the merits; its determination was affirmed both by the Appellate Division and by this court, but as indicated, the Supreme Court reversed, holding that the jurisdiction of the Adjustment Board was "exclusive" (339 U. S., at p. 244). Pointing to the *Pitney* case — where it was held that the federal court should have refused to entertain a jurisdictional dispute involving a railroad and two unions — the Supreme Court declared in *Slocum* that the reasoning in *Pitney* " equally supports a denial of power in any court — state as well as federal — to invade the jurisdiction conferred on the Adjustment Board by the Railway Labor Act " (339 U. S., at p. 244). It was the court's rationale that Congress had provided an administrative method of settling disputes before they reached " acute stages "; that the administrative officials comprising the Adjustment Board were better equipped than the courts to handle railroad employment problems; and that their decisions would provide a " desirable degree of uniformity in the interpretation of agreements throughout the nation's railway systems " (pp. 242–243). Accordingly, concluded the court, " We hold that the jurisdiction of the Board to adjust grievances and disputes of the type here involved is exclusive " (p. 244).

Since the type of controversy in the *Slocum* case is remarkably similar to that here involved, it follows that the Board's jurisdiction of the present dispute is likewise " exclusive." We need not decide — as the Supreme Court declined to do in *Slocum* — where the parties would stand, insofar as rights of review are concerned, if the Board had made a determination on the merits or had refused to take action at all. The court's remark that it was not " called upon to decide any question concerning judicial proceedings to review board action or inaction " (339 U. S., at p. 244, fn. 7), may leave open the

question whether there is any such power of review and, if there is, its scope and its extent. But the court's reservation of that question is not relevant here, since plaintiff is seeking, not a review of an administrative decision, but a trial of the facts *de novo*.

There is, of course, a difference between the *Slocum* case and the present one. Unlike the plaintiff in *Slocum,* the Brotherhood of Railroad Trainmen did first proceed before the Board, seeking redress in the courts only after the suggested adjustment efforts had failed. That did not justify the parties in foregoing further pursuit of their claims before the Board, in removing the controversy from the agency and litigating the controversy in the courts. In other words, the action taken by the Board did not render its jurisdiction one whit less exclusive. (Cf. *New Orleans Public Belt Railroad Comn.* v. *Ward,* 182 F. 2d 654, 656; *Hayes* v. *Union Pac. R. Co.,* 184 F. 2d 337, 338; *Hettenbaugh* v. *Airline Pilots Assn. International, supra,* 189 F. 2d 319, 321.) In ruling that the courts had no jurisdiction, even after the Board's jurisdiction had been invoked and it had taken some action, the Court of Appeals for the Fifth Circuit wrote in the *Ward* case (*supra,* 182 F. 2d 654, 656): " It is true that in that case [the *Slocum* case] the suit was brought in the state court and before the Board had acted, instead of, as here, in the federal court and after it had acted, but the language and scope of the decision is conclusive authority for the view that we take, that the complaint does not present a justiciable declaratory judgment controversy." And in the *Hettenbaugh* case, it was said: " The Congress did not, by the Railway Labor Act, grant jurisdiction to the federal courts to afford relief for breaches of performance of collective bargaining agreements. Appropriate quasi-judicial tribunals have been established for that purpose. Slocum v. Delaware, L. & W. R. Co., 339 U. S. 239 * * *. It is only when collective bargaining agreements are unlawfully entered into, or when the agreements themselves are unlawful in terms or effect, that federal courts may act " (189 F. 2d, at p. 321).

Turning again to the case before us, all the Adjustment Board did was to dismiss plaintiff union's case with a direction that the question should be " adjusted " between the interested unions, because it involved " classification of service " under

" conflicting agreements and facts ". This was in no sense any adjudication, final or otherwise, of the merits of the controversy. What the parties wanted to know, and what they wanted decided, was which of the unions, under the agreements in question, was entitled to the 3:00 P.M. City Line Job. Instead of giving them an answer, the Board sent them back either to negotiate further in conferences between representatives or to seek arbitration. It recognized, of course, that it had jurisdiction of the controversy, and there is nothing to indicate that it did not contemplate ultimate settlement of the issue in accordance with the administrative procedures provided within the Railway Labor Act. If further conferences proved of no avail, and arbitration was not desired or pressed — for it could not be compelled (Railroad Labor Act, § 7; U. S. Code, tit. 45, § 157) — the dispute should have been resubmitted to the Adjustment Board, for it remained the ultimate and sole arbiter of the dispute. (Cf. *Order of Railway Conductors and The Central Railroad Company of New Jersey,* Award No. 14673, pp. 15–16.)

It may be urged that, upon such resubmission, the Board may still decline to decide the controversy, and that the Railway Labor Act provides neither for a review of the Board's " dismissal " of the claim nor for a method to compel the Board to decide the " merits " of the controversy presented. Even if that be so, we suggest that that follows from the provisions of the federal statute, its scheme and its design. In enacting the statute, Congress determined that, if decisions are to be made upon basic questions of railroad-employee relations, they must be made, if at all, by the designated agency " peculiarly competent " to decide them; that, if disputes arise as to the meaning, application or scope of agreements between railroads and unions involving labor relations, they must be read and construed, in the light of usage, practice and custom, by the designated body most familiar with them. (See *Slocum* v. *Delaware, L. & W. R. Co., supra,* 339 U. S. 239, 244.) To attain the essential certainty and uniformity of decision and policy in the field, and to avoid a myriad of divergent and conflicting determinations by numberless courts and judges throughout the country, Congress found it necessary to vest exclusive jurisdiction in the Railroad Adjustment Board.

The judgment of the Appellate Division should be affirmed, with costs to the defendant Delaware, Lackawanna & Western Railroad Company.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FROESSEL, JJ., concur.

Judgment affirmed. [See 303 N. Y. 907.]