**Armond CHOATE et al., Petitioners,**

v.

**GRAND INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS et al., Respondents.**

No. A–6669.

Supreme Court of Texas.

July 9, 1958.

Rehearing Denied July 23, 1958.

Fields & Carroll, Port Lavaca, for petitioner.

John T. Vance, Callaway S. Vance, Cullen B. Vance, Edna, for respondents.

Abner v. McCall, Waco, Harris & Reeves, Ft. Worth, for petitioners.

Willis & Willis, Dallas, Clarence E. Weisell, Cleveland, Ohio, for respondents.

WALKER, Justice.

This suit for equitable relief was brought by petitioners individually and as a class action on behalf of the members of Local 187, Grand International Brotherhood of Locomotive Engineers. Petitioners are employed as locomotive engineers by the Rock Island Railroad, and the purpose of their suit is to prevent union interference with the alleged right of Rock Island engineers to man engines belonging to such railroad and used for switching operations in the Dallas-Irving area. All of the petitioners except one are members of the union. The defendants in the trial court and respondents here include the Grand International Brotherhood, the chairmen of its grievance committees for the Rock Island, Burlington-Rock Island, and Fort Worth & Denver railroads, and the chief dispatchers of the three carriers. Upon motion of the Brotherhood, the suit was dismissed on the pleadings by the trial court on the ground that its subject matter lies within the exclusive jurisdiction of the National Railroad Adjustment Board, and the Court of Civil Appeals affirmed. 307 S.W.2d 854. In our opinion the cause of action alleged by petitioners is cognizable by a court of equity, and the case will accordingly be remanded for a trial on the merits.

The events giving rise to this controversy are related in petitioners' pleadings. In 1933 the four railroad brotherhoods entered into an agreement to regulate the manning of trains between Fort Worth and Teague. At that time the Rock Island was operating between Fort Worth and Dallas, the M. K. & T. between Dallas and Waxahachie, and the Burlington-Rock Island between Waxahachie and Teague. In so far as it relates to this suit, the only track then in operation was that running from Fort Worth to Teague. The agreement provides that the first five freight crews operating in the territory between those two points shall be prorated between Rock Island, Burlington-Rock Island and Fort Worth & Denver engine and train service employees in accordance with a tabulation and certain examples set out in Article 1. As the situation stood in 1933, the distance operated over Burlington-Rock Island track from Teague to Waxahachie was 67 miles, and the distance operated over Rock Island rails from Fort Worth to Dallas was 34 miles. It was accordingly provided that all regular and extra freight crews above five in the territory covered by the contract would be apportioned on a mileage basis as follows: Burlington-Rock Island 66⅔% and Rock

Island 33⅓%. Petitioners allege that the sole purpose of this agreement was to enable trains to run from Fort Worth to Teague without the necessity of changing crews.

While the 1933 contract was not executed by the three carriers, Rock Island's response to requests for admissions submitted by petitioners indicates that the agreement was accepted by it as regulating the proportion of work between employees of the different companies in the territory mentioned. We shall assume that the agreement was also accepted by the other railroads and became an effective contract between the brotherhoods and the interested carriers.

There was no industrial switching between Fort Worth and Teague when the 1933 contract was executed. Since that time, however, the Rock Island has constructed approximately 50 miles of switch track leading to industrial sites in and around the Dallas-Irving area. This switch track is owned exclusively by Rock Island and only that railroad operates trains on it. These are not through trains, and no business other than that of Rock Island is handled thereby. In 1948 the local union of Rock Island engineers, a subsidiary of respondent Brotherhood entered into an agreement with Rock Island by the terms of which engineers employed by that railroad would handle all trains on the switcher tracks in the Dallas-Irving area.

The Burlington-Rock Island has ceased operations in the territory covered by the 1933 contract and leased its track and equipment to the Rock Island and the Fort Worth & Denver. Its former employees are now working for other railroads, primarily the Fort Worth & Denver. These former Burlington employees or others affected by the 1933 contract evidently objected to the 1948 agreement, because the Grand Chief Engineer of respondent Brotherhood entered an order cancelling the latter and directing that all work done in the area be prorated according to the earlier agreement.

This order was upheld by the Tri-Annual Convention of the Brotherhood, and petitioners have exhausted their right of appeal within the union.

In addition to the facts already mentioned, petitioners allege that they have entered into a contract to work for the Rock Island, that work performed solely on track belonging to one railroad is normally done by the employees of that carrier, that the Rock Island is ready, able and willing to allow its employees to operate the switchers in question, and that there is no dispute between them and the railroad. The petition states that the other brotherhoods have refused to apply the 1933 contract to the Dallas-Irving switchers, and that the trainmen's union is dividing the work equally. Petitioners further allege that the action of respondent Brotherhood in placing such switchers under the terms of the agreement violates Section 38B of the Standing Rules of the Brotherhood, which is set out in the petition, and is also capricious and arbitrary in that it gives preferential treatment to one group of employees over another group of equal standing in the same area. There are also allegations of irreparable damage. The relief sought is a permanent injunction restraining the Brotherhood from interfering with petitioners' performance of the work on the Dallas-Irving switchers.

Respondent Brotherhood's position, which has been sustained by the courts below, is that exclusive jurisdiction of this controversy is vested in the Adjustment Board by the Railway Labor Act, 45 U.S.C.A. § 153 First (i), which provides:

"(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * * shall be handled in the usual manner up to and including the chief operating officer of the carrier * * *; but, failing to reach an adjustment in this manner, the dis-

putes may be referred * * * to the appropriate division of the Adjustment Board * * *."

█ █ It will be noted that the Act refers only to "disputes between an employee or group of employees and a carrier or carriers." Controversies between railroad employees and their union are thus not included in the jurisdiction granted thereby. That the Board has exclusive jurisdiction in the first instance of a dispute between employees and a carrier involving grievances or the interpretation or application of valid working agreements is not open to question. Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; Order of Ry. Conductors of America v. Southern Ry. Co., 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811; Spires v. Southern Ry. Co., 4 Cir., 204 F.2d 453; Brennan v. Delaware, L. & W. R. Co., 303 N.Y. 411, 103 N.E.2d 532 (certiorari denied 343 U.S. 977, 72 S.Ct. 1073, 96 L.Ed. 1369); Brotherhood of Railroad Trainmen v. Texas & P. Ry. Co., Tex.Civ.App., 231 S.W.2d 451 (no writ). It is equally well settled, however, that both the state and federal courts may entertain a suit by railroad employees against their bargaining representative for a breach of the latter's statutory duty to represent all members of the craft fairly, impartially, in good faith and without hostile discrimination. The courts have jurisdiction of such cases, where the controversy turns on the validity of the contract and not its meaning, even though the carrier is a nominal party to the suit and will be incidentally affected by its outcome. Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood of Locomotive F. & E., 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283; Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80.

Each of the four cases last cited involves discrimination because of race, and respondent Brotherhood suggests that the principles there announced are not applicable where discrimination of that type is not involved. No basis for that distinction can be found in the opinions of the Supreme Court of the United States. After referring to the statutory duty resting upon the bargaining representative to exercise fairly the powers conferred upon it in behalf of all for whom it acts, the Court in the Steele case said [323 U.S. 192, 65 S.Ct. 232]:

"This does not mean that the statutory representative of a craft is barred from making contracts which may have unfavorable effects on some of the members of the craft represented. Variations in the terms of the contract based on differences relevant to the authorized purposes of the contract in conditions to which they are to be applied, such as differences in seniority, the type of work performed, the competence and skill with which it is performed, are within the scope of the bargaining representation of a craft, all of whose members are not identical in their interest or merit. * * * Without attempting to mark the allowable limits of differences in the terms of contracts based on differences of conditions to which they apply, it is enough for present purposes to say that *the statutory power to represent a craft and to make contracts as to wages, hours and working conditions does not include the authority to make among members of the craft discriminations not based on such relevant differences.* Here the discriminations based on race alone are obviously irrelevant and invidious. * * *" (Emphasis added.)

As pointed out in Mount v. Grand International Brotherhood of L. E., 6 Cir., 226 F.2d 604, 607 (certiorari denied 350 U.S. 967, 76 S.Ct. 436, 100 L.Ed. 839):

" * * * It is true that the particular discrimination involved in those cases was based upon race, but the rulings are based upon the broad principle that

the Railway Labor Act prohibits 'hostile discrimination' between members of the craft, irrespective of whether it is based on race or some other ground unrelated to race. * * * 'Hostile discrimination' is not limited to discrimination on account of race. * *" See, also, Hargrove v. Brotherhood of L. E., D.C.D.C., 116 F.Supp. 3.

Colbert v. Brotherhood of Railroad Trainmen, 9 Cir., 206 F.2d 9 (certiorari denied 346 U.S. 931, 74 S.Ct. 320, 98 L.Ed. 422), cited by respondent Brotherhood, is not in point here. Both the carrier and the bargaining representative were there aligned against the plaintiff employees and actively resisting the suit, which involved a claim that new seniority rules established by agreement between the railroad and union were arbitrary and capricious. The Court concluded that there was no showing that the new rules were not based on "relevant differences," and that the plaintiffs could show neither irreparable loss nor inadequacy of legal remedy until the agreement had been submitted to and interpreted by the Adjustment Board.

The present suit falls within the rule of the Steele case as applied in Mount v. Grand International Brotherhood of L. E., supra; Hargrove v. Brotherhood of L. E., supra; and Brotherhood of Railroad Trainmen v. Luckie, Tex.Civ.App., 286 S.W.2d 712 (wr. ref. n. r. e.). The Mount case was an action by a railroad engineer to restrain the union from negotiating with the carrier an alleged discriminatory amendment to the existing working agreement. After adverting to the holdings of the Slocum, Colbert and Spires cases, the Court said: " * * * This is not a case involving the construction or interpretation of the collective bargaining agreement. As was pointed out in Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, at page 774, 72 S.Ct. 1022, at page 1025: 'This dispute involves the validity of the contract, not its meaning.' In this case, as in that case, the employees 'must look to a judicial rem-

edy to prevent the sacrifice or obliteration of their rights under the Act.'"

It was contended in the Luckie case that the National Mediation Board had exclusive jurisdiction of the controversy, but the principles controlling the determination of that question apply with equal force to the present suit. There the M. K. & T. operated trains over track owned by the T. & P. and the union ruled that T. & P. employees were entitled to man one M. K. & T. train in lieu of their own discontinued train over the same route. The testimony disclosed that the effect of the order was to change existing contracts in a manner that was arbitrary and discriminatory as to the M. K. & T. employees. Although the carrier was a party to the suit, we agreed with the conclusion of the Court of Civil Appeals that the dispute was not within the exclusive jurisdiction of the Mediation Board, the question being squarely presented by the application for writ of error. The fact that a temporary rather than a permanent injunction was involved there does not distinguish the case from this one, because a court which has no jurisdiction of a controversy can grant neither a temporary nor a permanent injunction.

Whether this suit be regarded as an attack on the validity of the order of the Grand Chief Engineer or upon the legality of the contract as applied to the switching operations in question, there is no dispute as to the meaning and effect of the agreement. Its construction and interpretation will not be involved in a determination of the issues raised by the pleadings. Petitioners recognize that if a contract requiring that the switching operations be prorated as provided in the 1933 agreement is valid, the Burlington-Rock Island engineers get two-thirds of the runs.

■ This is not a jurisdictional dispute between two rival labor organizations, nor is it a controversy between railroad employees and a carrier. It is simply a dispute between employees and their bargaining representative as to the validity of the working agreement if applied as directed

by the latter. According to the petition, the Rock Island is ready and willing to allow petitioners to man the switchers in question. While the three railroads have been made parties to the suit, they are not actively resisting petitioners' claims and have not participated therein except to file a general denial in the trial court. If petitioners are finally granted the relief they seek, the decree will have no effect upon the carriers except to relieve them of any duty to allocate the work in accordance with the 1933 contract and leave them free to negotiate an agreement covering same. The carriers are thus only nominal parties to the suit and will not be adversely affected by its outcome. Since the real controversy as disclosed by the pleadings is one between employees and their bargaining representative as to the validity of the agreement and the order of the Grand Chief Engineer, it is our opinion that the trial court has jurisdiction of the suit.

We are here concerned only with jurisdiction of the subject matter as shown by the pleadings, and the foregoing discussion must not be taken as the expression of an opinion on the merits of the case.

The judgments of the courts below are reversed, and the cause is remanded to the district court for a trial on the merits.