Lawrence W. LARSEN, Plaintiff-Appellant,

v.

AMERICAN AIRLINES, INC., Defendant-Appellee.

No. 163, Docket 27780.

United States Court of Appeals Second Circuit.

Argued Dec. 6, 1962.

Decided Feb. 5, 1963.

Robert C. Bell, Jr., New York City, for appellant.

Arthur M. Wisehart, New York City (George A. Spater, New York City, of counsel), for appellee.

Before SWAN, FRIENDLY and KAUFMAN, Circuit Judges.

SWAN, Circuit Judge.

This is an action by plaintiff for alleged breach of contract by wrongfully discharging him from defendant's employment as an airplane pilot. Upon American's motion, Judge Metzner dismissed the amended complaint, pursuant to F.R.Civ.P. 12(b) (6), for failure to state a claim upon which relief can be granted.[1] Federal jurisdiction of the action is based on diversity of citizenship.

The amended complaint alleges the following: In 1951 the parties agreed that plaintiff would serve defendant as an airplane pilot as long as he maintained the proper qualifications for such position. This contract is governed by the collective bargaining agreement between the Air Line Pilots Association and American. Plaintiff performed his contract so satisfactorily that in 1955 he was promoted to a flight captain (first pilot). On March 15, 1959 a cargo airplane of which he was "pilot in command" crashed when attempting to land at Midway Airport in Chicago, Illinois. On April 29, 1959, American notified plaintiff of the termination of his employment because of his failure to exercise the requisite degree of skill during the attempt to land. Plaintiff requested a hearing; his request was granted, and the hearing was commenced on June 5, 1959, but was never completed. By its letter, dated June 26, 1959, American informed plaintiff that it concluded he had abandoned the discharge hearing procedures as outlined in the Company's agreement with the Air Line Pilots Association.[2] A subsequent letter dated January 11, 1960, notified him that American considered "the matter of your discharge closed. You are hereby notified accordingly."[3] Thereafter, on March 19, 1962, plaintiff filed his original complaint. His amended complaint was filed April 19, 1962. Paragraph 19 of the first count alleged that:

"By reason of the aforesaid refusal by defendant to grant plaintiff

1. Judge Metzner's memorandum opinion is reported at 207 F.Supp. 258.

2.                              "June 26, 1959

Mr. Lawrence W. Larsen
42 Edgewood Avenue
Springdale, Conn.
Dear Mr. Larsen:
  In my capacity as Hearing Officer assigned to investigate your discharge, I directed a letter to you requesting your intent with respect to continuance of your discharge hearing and asked that you notify me no later than June 22, 1959. My records show you received this letter on June 20, 1959. I have received no reply as of today.
  My conclusion is that you no longer wish to appeal your discharge and that

you have abandoned the discharge hearing procedures as outlined in the Agreement between the Company and ALPA.
        Yours very truly,
                American Airlines, Inc.
                J. B. Boyd
                J. B. Boyd, Regional
                  Manager—
                Flying Operations—Central"

3.                           "January 11, 1960

Mr. Lawrence W. Larsen
42 Edgewood Avenue
309 South Main Street
New Canaan, Conn.
Dear Mr. Larsen:
  Your failure to attend the Hearing scheduled for June 11, 1959 and your failure, thereafter, to comply with the

a hearing, or to complete the originally scheduled hearing, defendant has unlawfully discharged plaintiff from defendant's employ, and by reason of its refusal to employ plaintiff, defendant has breached its contract of employment with plaintiff."

There was a second count, paragraph 23 of which asserted:

"Defendant's termination of plaintiff's employment on the basis of an unsupported charge constitutes an unlawful discharge, and its refusal to employ plaintiff for such reason constitutes a breach of its contract of employment with plaintiff."

Appellant argues that the grievance procedure with respect to his discharge was defective because (1) there was no statement by American of the precise charges against him, and (2) the hearing, once commenced, was never completed.[4] Appellee contends that appellant's failure to exhaust the remedies provided by the grievance procedure precludes judicial intervention. We hold that the appellee's contention is correct.

One preliminary matter needs to be mentioned. The District Judge stated that in deciding American's motion to dismiss the amended complaint, he would ignore the accompanying affidavits. The taking of affidavits on a motion under Rule 12(b) (6) is a matter within the trial court's discretion. If such affidavits are taken the motion to dismiss is treated as one for summary judgment under Rule 56.[5] Since the trial judge could not properly have dismissed the action without reference to matters *dehors* the amended complaint itself, it would seem that he treated the motion as one for summary judgment, his own statement to the contrary notwithstanding. Consequently we shall review his disposition of the motion in that light.[6]

Appellant argues that the amended complaint states a claim upon which relief should be granted under Moore v. Illinois Central R. R., 312 U.S. 630, 61 S. Ct. 754, 85 L.Ed. 1089 (1941). In that case the Supreme Court held that an employee subject to the provisions of Title I of the Railway Labor Act, 45 U.S.C. §§ 151–163, might elect to treat his discharge as final and sue for damages without pursuing his administrative remedy before the adjustment board created by § 153 of the statute. Title II of the

June 22, 1959 deadline date, established by Mr. Boyd, and your subsequent inability to meet on scheduled dates, coupled with all other facts and circumstances involved, compels us to consider the matter of your discharge closed. You are hereby notified accordingly.

Very truly yours,
W. H. Miller
W. H. Miller
Regional Operations Officer—Eastern"

4. Section 27A. of the collective agreement between ALPA and American states:
"A. Hearing
"1. A pilot shall not be disciplined or dismissed from the service of the Company without notification in writing, of such action, nor without an investigation and hearing thereon, provided that such pilot makes written request for such investigation and hearing within ten (10) days after receiving such notification.
\* \* \* \* \*
"4. Prior to such investigation and hearing such pilot shall be notified in

writing by the Company of the precise charge or charges against him. He shall be given the necessary time, not exceeding ten (10) days, in which to secure the presence of witnesses and shall have the right to be represented by an employee of the Company of his choice or by his duly accredited representative or representatives."

5. For an excellent discussion of the history of this provision of Rule 12(b), see 2 Moore, Federal Practice ¶ 12.09 (2d ed. 1961).

6. The complaint did not include any reference to the provisions of the collective agreement dealing with appeal from, or finality of decisions rendered at various levels of the grievance procedure. It did not set out the text of appellee's letters of June 26, 1959 and January 11, 1960. Judge Metzner's decision to dismiss the complaint was based upon his analysis of these and other factors which did not appear in the complaint itself, but only in the affidavits.

Railway Labor Act (45 U.S.C. §§ 181–188), applicable in this case, relates to procedures in the aviation field analogous to those in the railroad field under Title I. Section 184 provides for the creation of boards of adjustment for each airline by contract.[7] The Moore holding applies under both Titles. Transcontinental & Western Air., Inc. v. Koppal, 345 U.S. 653, 660, 73 S.Ct. 906, 97 L.Ed. 1325.

However, the scope of the Moore doctrine has been successively whittled away by later cases. Slocum v. Delaware, L. & W. R. R., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, limited Moore to its own facts. Slocum involved a jurisdictional dispute between two rival unions; the employer brought a declaratory judgment action joining both unions as defendants. The Supreme Court held the suit would not lie because exclusive jurisdiction was vested in the adjustment board. Transcontinental & Western Air., Inc. v. Koppal, supra, placed a further limitation on the Moore doctrine. In Koppal, a suit for wrongful discharge, the Court held that an airline employee who had invoked the initial steps of the grievance procedure but had not pursued them to completion, was required to resort to the state law on the question of exhaustion of remedies. The Court noted that in Moore the applicable state law (Mississippi) had not required exhaustion. A subsequent case, Pennsylvania R. R. Co. v. Day, 360 U.S. 548, 553, 79 S.Ct. 1322, 3 L.Ed.2d 1422 points out that Moore represents an exception to the general rule that the adjustment board has primary jurisdiction in cases involving the interpretation of collective bargaining agreements. See also Union Pacific R. Co. v. Price, 360 U.S. 601, 609 n. 8, 79 S.Ct. 1351, 3 L.Ed.2d 1460; and article by Professor Summers, Individual Rights in Collective Agreements and Arbitration, 37 N.Y.U.L.Rev. 362, 386 n. 114.

Relying upon the Koppal decision, American contends that New York law is applicable here and that it requires exhaustion of the grievance procedure before resort to litigation. Brennan v. Delaware, L. & W. R. R. Co., 303 N.Y. 411, 103 N.E.2d 532, is cited to support the contention. We do not think it apposite.[8]

Judge Metzner could find no New York cases bearing directly on the question of exhaustion of remedies in the factual setting presented by plaintiff's suit. But he did find cases placing on an employee an obligation to abide by remedies set out in the collective agreement once he had chosen to enforce a right allegedly arising thereunder. Panzarella v. New York Cent. System, Inc., Sup.Ct., 27 Misc. 2d 57, 207 N.Y.S.2d 933 (1960); Spilkewitz v. Pepper, N.Y.City Ct., 159 N.Y.S. 2d 53 (1957); Di Rienzo v. Farrand Optical Co., Municipal Ct., 148 N.Y.S.2d 587 (1956); Johnson v. Kings County Lighting Co., Sup.Ct., 141 N.Y.S.2d 411 (1955).

We think these cases reflect a sound policy, and one which should be controlling in this case. In recent years it has become increasingly clear under § 301 of the Labor Management Relations [Taft-Hartley] Act, 29 U.S.C. § 185, that federal law would control a suit by an individual employee for a discharge alleged to be in contravention of a collective bargaining agreement. See Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed. 2d 972; Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L. Ed.2d 483; Local 174, Teamsters, etc., Union v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593; Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (Dec. 10, 1962). This line of cases is not directly controlling in the instant case,

---

7. These contracts provide that the board's decision shall be final, see Bower v. Eastern Airlines, Inc., 3 Cir., 214 F.2d 623, 625–626. The contract involved in the instant case so provided, see § 27C.1, set out in note 9, infra.

8. Brennan was not a wrongful discharge case; on its facts it was similar to Slocum. In deciding Brennan the Court of Appeals seems to have considered Slocum dispositive.

since §§ 2(2) and 2(3) of Taft-Hartley, 29 U.S.C. §§ 152(2) and 152(3), specifically exclude from the coverage of that act employers and employees subject to the Railway Labor Act, 45 U.S.C. §§ 151–188, as are the parties here. The Railway Labor Act contains no provision similar to Taft-Hartley § 301, and the Supreme Court has not considered the Lincoln Mills decision in a Railway Labor Act context. Nevertheless, the reasoning of the cases from Lincoln Mills to Smith v. Evening News would seem as applicable in the case of a discharged railroad or airline employee as in that of a discharged textile worker.

Under the Lincoln Mills approach, a court in fashioning federal law may draw on relevant state law; any "state law applied * * * will be absorbed as federal law." 353 U.S. at 457, 77 S.Ct. at 918. Whether our decision in the instant case be based upon state law which has been so "absorbed" under Lincoln Mills, or merely follows New York law under the familiar doctrine of Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the result in this case would be the same.

In the instant case, appellant's claim that his discharge was wrongful rests on his contention that American breached sections 27A.1 and 27A.4 of the collective agreement in that it denied him the hearing and failed to set out the precise charges required by those sections. Yet sections 27B.1 and 27C.1 of the same agreement state that decisions at the various levels of the grievance procedure must be appealed within 10 days; otherwise, they become "final and binding." [9] Appellant contends that no such decision was ever made known to him. We cannot agree. Whether or not American's letter of June 26, 1959 constituted such a "decision," we think the subsequent letter of January 11, 1960 did. Under the New York cases cited above, appellant cannot come into court demanding relief under some provisions of the contract—sections 27A.1 and 27A.4—while disregarding others—sections 27B.1 and 27C.1—which make the unappealed decision of January 11, 1960 "final and binding."

Furthermore, where a labor agreement provides for arbitration or other internal resolution of disputes, this court has held that questions of "procedural arbitrability" should be decided by an arbitrator, and that only questions of "substantive arbitrability" are for the courts. Livingston v. John Wiley & Sons, Inc., 2 Cir., 313 F.2d 52 (January 11, 1963). Whether the letter of January 11, 1960 (note 3, supra) constitutes a "decision" requiring Larsen to take his next step in the grievance procedure is a procedural question. He failed to appeal.

Judgment affirmed.

9. Section 27B.1 of the collective agreement states:
"B. Appeal
"1. When a copy of such decision has been received by the pilot or his duly accredited representative or representatives, and if such pilot is dissatisfied with the Company's decision, he shall have the right of appeal to the Regional Operations Officer of the Company, provided such appeal request is filed by the pilot in writing with the Regional Operations Officer of the Company within ten (10) days from the date such pilot receives a copy of the Company's decision of the first investigation and hearing provided in paragraph A of this Section. Such appeal hearing shall be held within ten (10) days after the receipt of the pilot's written request therefor by the Regional Operations Officer of the Company."
Section 27C.1 of the collective agreement states:
"1. If any decision made by the Company under the provisions of this Section is not appealed by the pilot affected within the time limit prescribed herein for such appeals, the decision of the Company shall become final and binding."