Salvatore **J. PACILIO**, Plaintiff,

v.

The **PENNSYLVANIA RAILROAD COMPANY**, Defendant.

United States District Court
S. D. New York.
June 17, 1964.

Leo Gitlin, New York City, for plaintiff.

Conboy, Hewitt, O'Brien & Boardman, New York City, for defendant; R. L. Duff, New York City, of counsel.

METZNER, District Judge.

Defendant moves for summary judgment in this action for unlawful discharge brought by a former employee.

The complaint alleges that the plaintiff was employed by the defendant as a coach cleaner, that he was injured during the course of his employment, and that he instituted an action to recover damages for his injuries which was settled for $40,000. Thereafter plaintiff's physician found him fit to perform the duties previously assigned to him. He then alleges that he made application to the defendant to be allowed to return to work in his former position, but that this application was rejected. Plaintiff claims that he has exhausted all procedures afforded him under the Railway Labor Act and the grievance procedure provided by the collective agreement between the defendant and the union of which plaintiff was a member. The complaint seeks damages for wrongful discharge.

At the time of settling the lawsuit plaintiff signed a release which contained the following language:

"I agree that this sum of money is paid to me because of my representa-

tion that as a result of such injuries, I am totally and permanently disabled from performing the normal duties of an employe in Maintenance of Equipment service."

The effect of this release and any oral understandings at the time of its signing are not the issues involved on this motion. The issue to be decided is the effect to be given to the contract between the defendant employer and the union of which plaintiff is a member, which is the basis of plaintiff's employment.

That document states that it "shall constitute an agreement between the Pennsylvania Railroad Company and employes of said Company represented by the Labor Organizations, parties to this Agreement. * * * "

Regulation No. 7 thereof outlines the procedure to be followed when grievances are presented of the type here in question. 7–A–2 provides that "the employe affected *or* his duly accredited Union representative" (emphasis supplied) presents the case in writing to the foreman. If the foreman's decision is unsatisfactory, the case may then be appealed "by the employe affected *or* by the said Union representative in his behalf" to the superintendent of personnel. If the superintendent does not decide the case within thirty days, it will be considered that he has denied the application. If the case is not adjusted satisfactorily, "it may then be handled by the employe *or* by the duly accredited Union representative with the Manager of Labor Relations." If the manager does not make a decision within sixty days of the date of the discussion with him, the case shall be considered denied.

7–A–3 sets forth the suggested form to be used by either the employee or the union representative for the adjustment of a grievance up to and including the superintendent level.

7–B–3(a) provides for the form of a submission prepared by the superintendent and the union representative covering a controversial matter not disposed of by the superintendent. Subdivision (b) of this regulation provides that in the handling of controversial matters beyond the superintendent the party desiring to advance the case to the manager must, within thirty days of the conclusive handling by the superintendent of the matter, request that a joint submission be prepared as provided or the matter will be considered closed. When such a request has been made, the preparation of a submission will be discussed and the parties will exchange their respective positions and statements of fact. If the exchange of the respective positions and statements of fact is not accomplished as provided, "either party may then make a separate Submission to the Manager of Labor Relations."

There is some ambiguity between 7–B–3, which refers to a submission to the manager, prepared by the superintendent and the union representative, and 7–A–2, which gives the employee, individually, the right to prosecute his case up through the manager of labor relations. In my opinion, in view of the language appearing in 7–B–3(b), referring to "the party desiring to advance the case to the Manager of Labor Relations", this is resolved in favor of reading into 7–B–3(a) the right of the employee to work out a submission with the superintendent. Otherwise, 7–A–2 would be meaningless.

A separate agreement between "the Pennsylvania Railroad Company and employes of said Company * * * " as represented by the United Railroad Workers Division of the Transport Workers Union of America—CIO, was entered into January 5th, 1956 for the purpose of setting up a System Board of Adjustment pursuant to section 3, Second of the Railway Labor Act. Disputes are to be set forth in a submission in the form provided by regulation 7–B–3. The purpose of this board is to dispose of disputes not disposed of after handling in accordance with regulation 7–B–1.

The agreement further provides that the decisions of the board shall be final and binding upon all parties to the dispute.

On September 14, 1959 the union, on behalf of the plaintiff, initiated grievance procedures by filing with the foreman a request that plaintiff be given a physicial examination, and if found fit, to be restored to duty. The case then went to the superintendent pursuant to the union's request. The claim was discussed and rejected. No further steps were taken by the union.

On January 25, 1960 the union again initiated grievance procedures on behalf of the plaintiff. Again the claim was rejected at the superintendent level. A joint submission to the manager was requested by the union and the superintendent presented his proposed position. Thereafter the union notified the manager that it was withdrawing the case. Plaintiff asserts that he was never notified by the union of such action.

According to plaintiff's affidavit, he kept after the union, and it again submitted his grievance on July 17, 1963, which was rejected by the superintendent on August 21, 1963. No further steps were taken on this case.

■ The contract between the union and the defendant employer specifically "inured to" the benefit of the plaintiff. See Parker v. Borock, 5 N.Y.2d 156, 182 N.Y.S.2d 577, 156 N.E.2d 297 (1959); Ott v. Metropolitan Jockey Club, 282 App.Div. 946, 125 N.Y.S.2d 163 (1953), aff'd, 307 N.Y. 696, 120 N.E.2d 862 (1954). In fact, it stated that it was between the defendant and the employees as represented by the union.

Not only did the union have the right to initiate grievance procedures, but the individual employee also had that right. And this individual right continued up to and including the manager level.

■ In this case the procedures were initiated by the union on plaintiff's behalf. Having initiated the procedures, plaintiff was obligated to abide by the remedies provided in the collective agreement. The withdrawal of the submission to the manager in 1960 and the failure to proceed past the superintendent level in 1963 rendered the administrative rulings binding. Larsen v. American Airlines, 313 F.2d 599 (2d Cir. 1963).

Motion for summary judgment granted. So ordered.